IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| S&T OIL EQUIPMENT & MACHINERY, LTD, *et al.*, § § | | |
| Plaintiffs, | § § § | |
| v. | § § | CIVIL ACTION NO. H-11-0542 |
| JURIDICA INVESTMENTS LIMITED, *et al.*, | § § § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Pending before the Court is Plaintiffs' Ex Parte Emergency Application for Temporary Restraining Order and Order to Show Cause Regarding Preliminary Injunction [Doc. # 2] (the "TRO Application"), seeking to enjoin a pending foreign arbitration proceeding. Defendants have filed a response in opposition [Doc. # 15], and the Court held a hearing on this matter on February 24, 2011. Having reviewed the full record in this case and applicable legal authorities, the Court **denies** the TRO Application.

**I.    FACTUAL BACKGROUND**

This case arises out of a contractual relationship between Plaintiffs and Defendant Juridica Investments Ltd. ("JIL"). JIL provides litigation financing to businesses involved in expensive, complex, high-risk commercial legal disputes. In

May 2008, Plaintiffs entered into an "Investment Agreement" with JIL, whereby JIL agreed to fund part of the legal fees and costs of an arbitration before the International Center for the Settlement of Investment Disputes that Plaintiffs had brought against the Government of Romania arising from commercial activity in Romania (the "Romanian Arbitration").[1] This arbitration took place in Washington, D.C. from 2007 to approximately 2009. The law firm of King & Spalding represented Plaintiffs in the Romanian Arbitration under a contingency fee contract. Plaintiffs' Investment Agreement with JIL changed that financial arrangement.

The parties' Investment Agreement requires arbitration of all disputes between the parties.[2] The arbitration provision mandates the arbitration will be through the

---

[1] The Romanian Arbitration was ultimately dismissed.

[2] Investment Agreement [Doc. # 3-2], ¶ 15.2 ("[With exceptions not pertinent to this case] all actions, disputes, claims and controversies under common law, statutory law or in equity of any type whatsoever, whether arising before or after the date of this Agreement, and whether directly or indirectly relating to: (a) this Agreement and/or any amendments and addenda hereto, or the breach, invalidity or termination hereof; (b) any previous or subsequent agreement between ASSIGNEE [JIL] and ASSIGNORS [S&T Oil Equipment & Machinery Ltd. and Mr. Valerian Simirica]; (c) any act committed by ASSIGNEE or by any parent company, subsidiary, or affiliated company of ASSIGNEE (the 'ASSIGNEE Companies'), or by any employee, agent, officer or director of an ASSIGNEE Company whether or not arising within the scope and course of employment or other contractual representation of the ASSIGNEE Companies (provided that such act arises under a relationship, transaction or dealing between ASSIGNEE and ASSIGNORS); (d) any act committed by ASSIGNORS or by any parent company, subsidiary or affiliated company of S&T (the 'ASSIGNOR Companies'), or by any employee, agent, officer or director of an ASSIGNOR Company whether or not arising within the scope and course of employment or other contractual representation of the ASSIGNOR Companies (provided that such act

London Court of International Arbitration ("LCIA").[3] The Investment Agreement further requires that the situs of any arbitration be in Guernsey, Channel Islands,[4] where JIL is incorporated.

JIL initiated arbitration proceedings against Plaintiffs on December 22, 2010. Plaintiffs filed the instant case with an Ex Parte Emergency Application for Temporary Restraining Order and Order to Show Cause Regarding Preliminary Injunction [Doc. # 2] (the "TRO Application"), seeking to enjoin that arbitration from going forward. The Court required Plaintiffs serve Defendants with all papers filed of record and refused to grant any *ex parte* relief. Defendants filed a response to the TRO Application [Doc. # 15] and the Court held an evidentiary hearing on that Application on February 24, 2011. The TRO Application is now ripe for decision.

---

arises under a relationship, transaction or dealing between ASSIGNEE and ASSIGNORS) and/or (e) any other relationship, transaction or dealing between ASSIGNEE and ASSIGNOR (collectively the 'Disputes') will be subject to and resolved by binding arbitration.").

[3] *Id.*, ¶ 15.3 ("All arbitration hereunder will be conducted in accordance with the Arbitration Rules ('Rules') of The London Court of International Arbitration ('LCIA').").

[4] *Id.*, ¶ 15.4 ("The seat and situs of the arbitration and of all oral arbitration hearings will be in St. Peter Port, Guernsey, Channel Islands.").

## II.     APPLICABLE LAW

A party seeking a temporary restraining order or other injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure has the burden to demonstrate each of four elements:  (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any prejudice the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest.  *See Janvey v. Alguire*, 628 F.3d 164, 174 (5th Cir. 2010); *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 285 (5th Cir. 1999).  Injunctive relief, particularly at the preliminary stages of litigation, is an extraordinary remedy that requires an unequivocal showing of the need for the relief to issue.  *See Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997).  Injunctive relief should only be granted where the movant has "clearly carried the burden of persuasion." *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009).

***Substantial Likelihood of Success on the Merits.*–**   Plaintiffs have not demonstrated a substantial likelihood of success on the merits of their claims. Plaintiffs claim that the arbitration clause of the Investment Agreement (1) is unenforceable under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), as implemented by Congress through 9 U.S.C.

§§ 201-208; (2) was procured by fraud; and (3) is substantively and procedurally unconscionable. None of these arguments is persuasive on the present record.

Plaintiffs assert that the arbitration provision is unenforceable under the Convention because Plaintiffs and JIL are both United States citizens for purposes of 9 U.S.C. § 202 and the underlying agreement is not related to Guernsey.[5] Plaintiffs argue that even though JIL is incorporated in Guernsey, JIL has its principal place of business in the United States because that is where JIL's officers allegedly direct, control, and coordinate the corporation's activities. Plaintiffs rely on *Astra Oil Trading NV v. Petrobas*, No. H-09-1274, 2010 WL 3069793 (S.D. Tex. 2010), for the proposition that the Supreme Court's interpretation of "principal place of business" in *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2009), applies for purposes of 9 U.S.C. § 202. In *Hertz*, the Supreme Court, in evaluating diversity jurisdiction,

---

[5] Section 202 provides:

> An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States.

9 U.S.C. § 202 (2006).

concluded that "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." 130 S. Ct. at 1192. Plaintiffs rely on the roles of Richard W. Fields ("Fields") and Timothy D. Scrantom ("Scrantom"), who are "senior management" of Juridica Capital Management Limited ("JCML"), which serves as JIL's investment manager. Plaintiffs argue that JIL's principal place of business is New York because Fields and Scrantom (senior managers of JCML) implement, direct, and coordinate JIL's activities from New York.[6] To support their argument, Plaintiffs cite to: (1) JIL's submission to the AIM,[7] which *inter alia* describes JIL's investment management agreement with JCML;[8] (2) JIL's website; (3) Fields' business card and voter registration information; and (4) JIL's UCC filings.[9]

In response, Defendants argue and present evidence that the arbitration provision is enforceable under the Convention because, JIL is in fact a foreign entity,

---

[6] *See* Memorandum in Support of Ex Parte Emergency Application for Temporary Restraining Order and Order to Show Cause Regarding Preliminary Injunction [Doc. # 3] ("Memorandum in Support of TRO Application"), at 3-4.

[7] According to Defendants, "AIM" is an alternative market operated by the London Stock Exchange. *See* Declaration of Paul Sullivan ("Sullivan Declaration"), ¶ 5, attached as Exh. A to Defendants' Response in Opposition to Motion for Temporary Restraining Order [Doc. # 15].

[8] *See* JIL's Admission to Trading on AIM [Doc. # 3-3], at 17, 27-29, 64-65.

[9] *See* Exhibit 4 to Plaintiffs' Memorandum in Support of TRO Application [Doc. # 3-4].

namely, that (1) JIL is incorporated and maintains its only offices in Guernsey; (2) JIL's registered agent is located in Guernsey; (3) JIL does not have any offices, officers, or employees outside of Guernsey; (4) all contracts entered into by JIL are executed and delivered in Guernsey; (5) JIL maintains its accounts in Guernsey, (6) JIL holds its funds in banks in Guernsey, (7) JIL disburses funds used for its investments from Guernsey, and (8) JIL remits all proceeds from its investments to accounts in Guernsey.[10]  JIL also presented evidence that it is controlled by a three-member board of directors consisting of Lord Daniel Brennan, Q.C., a British citizen living in England, Richard D. Battey, a British citizen living in Guernsey, and J. Kermit Birchfield, and American citizen living in the United States.  JIL's board of directors meets in person on a quarterly basis and the majority of its meetings have been conducted in-person in Guernsey.[11]  Defendants further and alternatively argue that the arbitration provision is enforceable under the Convention because the parties' commercial relationship has a "reasonable relation with one or more foreign states," specifically, that the Investment Agreement was for payment of attorneys fees for an international arbitration against the Romanian government and concerning

---

[10]   *See* Sullivan Declaration, ¶¶ 4, 5, 28.

[11]   *See id.*, ¶ 27.

commercial activity in Romania.[12] Defendants additionally argue that the Investment Agreement "envisages performance or enforcement abroad" under 9 U.S.C. § 202 because it specifically states that it has been executed in Guernsey and that performance of its terms would occur in Guernsey.[13]

The Court concludes that Plaintiffs have not demonstrated a substantial likelihood of success on the merits of their position that JIL is not a non-United States entity for purposes of 9 U.S.C. § 202. The Court does not decide here whether or not the *Hertz* test applies to § 202. The Court merely concludes that even if the *Hertz* standard applies, Plaintiffs have not demonstrated a substantial likelihood that they can prove that the United States is where JIL's officers direct, control, and coordinate JIL's activities. *See Hertz*, 130 S. Ct. at 1192. Indeed, Plaintiffs' evidence establishes that Fields and Scrantom are employed by Juridica Capital Management Limited ("JCML"), a separate company incorporated in Guernsey with whom JIL has an Investment Management Agreement.[14]

The Court is also unpersuaded by Plaintiffs' argument that the subject of the

---

[12] *See* Defendants' Response in Opposition to Motion for Temporary Restraining Order [Doc. # 15] ("Response in Opposition to TRO Application"), at 11-13.

[13] Defendants cite to the Investment Agreement, ¶ 27. The cited page of the agreement is not included in the record, but Plaintiffs have not contested this reference.

[14] *See* JIL's Admission to Trading on AIM [Doc. # 3-3], at 27-29.

parties' dispute, fees paid by JIL in connection with an arbitration concerning the Romanian government's business dealings, does not create a "reasonable relationship" to one or more foreign states for purposes of § 202.  The Court concludes that Plaintiffs have failed to show substantial likelihood of success on the merits of its contentions that the arbitration provision is unenforceable because of the absence of an international nexus required by § 202.

Plaintiffs next argue that the arbitration provision is unenforceable because it was obtained by "fraud."  Plaintiffs contend one of the non-executive members of JIL's Board of Directors, Lord Daniel Brennan ("Brennan"), is a member of the LCIA's Board of Directors, which is responsible for appointing the LCIA Court, which, in turn, is responsible for appointing arbitrators to various cases.[15]  Plaintiffs argue that this alleged relationship presents a conflict of interest and add that they would not have agreed to the arbitration provision had they known this fact.  Defendants contradict this argument with direct evidence.  Defendants present the affidavit of Brennan that he was never on the LCIA's Board of Directors and has no influence on the selection of arbitrators or the assignment of arbitrators to cases.[16]  Therefore, Plaintiffs fail to show a substantial likelihood of success on the merits of

---

[15]   Memorandum in Support of TRO Application, at 8.

[16]   *See* Response in Opposition to TRO Application, at 16-17; *see also* Declaration of Daniel Brennan [Doc. # 23-3], ¶¶ 9-15.

their contention that the arbitration provision was obtained by fraud.

Finally, Plaintiffs argue that the arbitration provision is both substantively and procedurally unconscionable. Plaintiffs rely on Texas law[17] stating that "[s]ubstantive unconscionability refers to the fairness of the arbitration provision itself, whereas procedural unconscionability refers to the circumstances surrounding adoption of the arbitration provision." *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006). Plaintiffs argue that the arbitration provision is substantively unconscionable because (1) it is expensive to arbitrate before the LCIA in Guernsey; (2) Juridica has the ability to determine the pool of potential arbitrators because Brennan allegedly is a member of the LCIA Board of Directors; and (3) generally, holding the arbitration in Guernsey, as a practical matter, will deprive Plaintiffs of their day in court. Plaintiffs further argue that the arbitration provision is procedurally unconscionable because King & Spalding, which allegedly represented Plaintiffs in the negotiations on the Investment Agreement, was "acting in its own self interest when it advised [P]laintiffs to enter into the arbitration provision."[18] Defendants strenuously disagree

---

[17] Plaintiffs cite to Texas, not Federal, law on unconscionability. "[A]s a matter of federal law, arbitration agreements and clauses are to be enforced unless they are invalid under principles of state law that govern all contracts." *Brown v. Pacific Life Ins. Co.*, 462 F.3d 384, 396 n.8 (5th Cir. 2006) (quoting *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 166 (5th Cir. 2004)). Accordingly, the Court applies Texas law and the parties' cited authorities.

[18] Memorandum in Support of TRO Application, at 11-12.

and have submitted countervailing evidence.

"The test for substantive unconscionability is whether, given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *See In re Palm Harbor Homes*, Inc., 195 S.W.3d at 678 (internal quotation marks omitted). "Unconscionability principles are applied to prevent unfair surprise or oppression." *Id.* at 679.

The Court is unpersuaded by Plaintiffs' arguments on unconscionability. First, Plaintiffs have not demonstrated that the expense of arbitration before the LCIA in Guernsey is significantly more than federal litigation in this district. Plaintiffs rely on *In re Olshan Foundation Repair Co., LLC*, 328 S.W.3d 883 (Tex. 2010), for the proposition that "to determine if the cost of arbitration renders the provision unconscionable, a party must provide a comparison of the total cost between litigation costs versus arbitration costs."[19] Plaintiffs rely simply on the LCIA Schedule of Arbitration Costs[20] and Internet printouts showing the comparative costs of flying

---

[19]  *Id.* at 9.

[20]  Exhibit 6 to Memorandum in Support of TRO Application [Doc. # 3-6].

from Chicago to Guernsey and Chicago and Houston for their cost comparison.[21] Plaintiffs do not estimate the total cost of arbitrating in Guernsey, nor provide any information regarding the expense to the parties of litigating in this Court. Moreover, the cost of travel to Guernsey is not necessarily implicated in the questioned arbitration. The Investment Agreement provides that an in-person hearing is only required if requested by either party. Further, Plaintiffs do not contradict Defendants' assertion that depositions of witnesses could be submitted as evidence in lieu of a live hearing. Plaintiffs have not provided persuasive evidence that it is materially more expensive to arbitrate this dispute in Guernsey than in federal court in Houston, Texas.

Plaintiffs also argue that Juridica has the ability to determine the pool of potential arbitrators because Brennan allegedly is a member of the LCIA Board of Directors. This argument, as discussed above, is unsupported by any evidence and is rejected.

Third, Plaintiffs claim, generally, that an arbitration in Guernsey is unconscionable because that location as a practical matter will deprive them of their

---

[21] *Compare* Exhibit 7 to Memorandum in Support of TRO Application [Doc. # 3-7] (showing flight from Chicago to London is $3000), *with* Exhibit 8 to Memorandum in Support of TRO Application [Doc. # 3-8] (showing flight from Chicago to Houston is approximately $940).

day in court.[22] Plaintiffs rely for this point on *Sudduth v. Occidental Pereune*, 70 F. Supp. 2d 691 (E.D. Tex. 1999), in which a forum selection clause in an international employment contract between United States citizens was not enforced because of the "grave inconvenience or unfairness of trying the case in Peru." *Id.* at 694-97. The *Sudduth* decision is not binding on this Court and, in any event, involved materially distinguishable facts from those presented here. Unlike *Sudduth*, which involved employment contracts to perform work in the Peruvian jungle between a California-based corporation and its employees, who were United States residents and citizens, the case at bar involves sophisticated commercial entities and a prominent arbitration provision.[23] The parties at bar agreed to arbitration in the jurisdiction of incorporation and the financial center of one of the signatories to the agreement. Plaintiffs simply have not presented evidence demonstrating that arbitration in Guernsey would cause "grave inconvenience or unfairness."

The Court accordingly concludes that Plaintiffs have not offered sufficient evidence demonstrating that arbitration in Guernsey makes the arbitration provision

---

[22] Memorandum in Support of TRO Application, at 9-11.

[23] On the title page of the Investment Agreement, which has only eleven lines of text, is the phrase: "**THIS AGREEMENT IS SUBJECT TO BINDING ARBITRATION.**" *See* Investment Agreement [Doc. # 3-2], at 1. This sentence stands alone in bold, and is at least 16 pt. font. The sentence could not be overlooked and gave Plaintiffs fair notice to check the details of the arbitration requirements.

so "one-sided" as to be unconscionable. *See In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 678; *see also Brown v. Pacific Life Ins. Co.*, 462 F.3d 384, 397-98 (5th Cir. 2006) (applying Louisiana law and declining to find arbitration clauses in financial services agreement unconscionable where plaintiffs were not forced to agree to those clauses and could have chosen not to engage the services of defendant, the arbitration clauses were not exceptional or burdensome, and there was no reason to believe plaintiffs had not knowingly and willingly accepted the terms).

Plaintiffs also have not demonstrated procedural unconscionability. Plaintiffs retained Illinois counsel, Stuart Spiegel, Esq., who is unaffiliated with King & Spalding, to review the Investment Agreement and to advise Plaintiffs on that Agreement.[24] Spiegel specifically emphasized that he had reviewed the arbitration provision and it very likely would be enforceable. The Court finds neither unfair surprise nor oppression under the circumstances here. *See In re Palm Harbor Homes, Inc.*, 195 S.W.3d at 679.

The Court thus concludes for the purposes of the TRO Application that Plaintiffs have failed, based on the evidence and arguments of record, to show substantial likelihood of success on the merits of any of their arguments that the

---

[24] *See* May 23, 2008 letter from Plaintiffs' counsel, Stuart Spiegel ("Spiegel"), to JIL, attached as Exhibit 1 to Defendants' Corrected Response in Opposition to Motion for Temporary Restraining Order [Doc. # 21]. This exhibit was also marked as Defendant's Exhibit 3 [Doc. # 23-4] at the Court's hearing on the TRO Application.

arbitration provision is unenforceable.  Accordingly, Plaintiffs have not carried their burden on this record to demonstrate a substantial likelihood of success on the merits of their claims and therefore are not entitled to a TRO.

In an exercise of caution, the Court turns to the other factors to be considered under Rule 65.

***Substantial Threat of Irreparable Injury.*** –  In Plaintiffs' Memorandum in Support of TRO Application,[25] the only irreparable harm argued is the largely unsupported assertion that they "are simply without the financial means to defend themselves in the costly LCIA arbitration."[26]  In the Fifth Circuit, the expense of an arbitration does not constitute irreparable harm.  *See City of Meridian v. Algernon Blair, Inc.*, 721 F.2d 525, 529 (5th Cir. 1983); *accord Siag v. King & Spalding LLP*, No. H-10-367, 2010 WL 2671580, at *2 (S.D. Tex. June 30, 2010); *Encompass Power Servs, Inc. v. Eng'g & Constr. Co.*, No. H-05-2759, 2005 WL 3234369, at *2 (S.D. Tex. Nov. 29, 2005).  Plaintiffs have not demonstrated that arbitration in Guernsey would be materially more expensive than in the Southern District of Texas.

---

[25] Memorandum in Support of TRO Application [Doc. # 3], at 12.

[26] *Id.* at 12.  Plaintiffs submitted an affidavit of Mr. Valerian Simirica, in which he avers that neither he nor his company S&T can afford the fees associated with the LCIA arbitration, including retaining English counsel; however, Plaintiffs have not submitted any other financial information.  *See* Affidavit of Valerian Simirica [Doc. # 3-1], ¶ 15.

At the hearing on the TRO Application, Plaintiffs also argued that they would suffer irreparable harm because any arbitration award would be unenforceable under the Convention, citing 9 U.S.C. § 202. However, as discussed earlier, Plaintiffs have not met their burden in this regard. Plaintiffs have not made a sufficient showing under § 202 that JIL has its principal place of business in the United States or that the arbitration provision does not have a reasonable relationship with one or more foreign states.

***Balance of Hardships.*** – Regarding the third prong of the Rule 65 test for issuance of a TRO, Plaintiffs have not demonstrated that any harm they may suffer from denial of the TRO outweighs the prejudice to Defendants caused if the court were to grant the requested TRO. Enjoining the arbitration harms JIL by preventing it from exercising the bargained for arbitration rights under the Investment Agreement. *See City of Meridian*, 721 F.2d at 529. Plaintiffs have not demonstrated any legally cognizable countervailing harm to outweigh this prejudice to JIL.[27] Plaintiffs have not met their burden on the third TRO factor.

***Public Interest.*** – The fourth TRO factor, the public interest, also favors denying Plaintiffs' request to enjoin the arbitration. There is a "liberal federal policy favoring arbitration agreements" and "injunctions staying arbitrations are viewed with

---

[27] Plaintiffs have not demonstrated that there is materially more expense associated with a Guernsey arbitration than Federal court litigation in Houston, Texas.

disfavor." *See id.* at 527, 529; *see also Siag*, 2010 WL 2671580, at *2 ("[E]njoining the arbitration proceedings would disserve the public interest by undermining confidence in arbitration provisions generally."). Furthermore, issuance of a TRO is an extraordinary remedy. There is a public interest in courts not granting such relief unless clearly warranted. *See, e.g.*, *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997); *accord Trevino v. Moore*, No. C-09-155, 2009 WL 3261564, at *1 (S.D. Tex. Oct. 8, 2009).

### III.  CONCLUSION AND ORDER

Plaintiffs have failed to establish any of the four elements necessary for the Court to issue a TRO. Accordingly, it is hereby

**ORDERED** that Plaintiffs' Ex Parte Emergency Application for Temporary Restraining Order and Order to Show Cause Regarding Preliminary Injunction [Doc. # 2] is **DENIED.**

SIGNED at Houston, Texas, this **10th** day of **March, 2011.**

_____
Nancy F. Atlas
United States District Judge