# EXHIBIT 2

# APPENDIX

## HEARING HELD BEFORE THE COMMITTEE ON FOREIGN RELATIONS ON FEBRUARY 9, 1970

The CHAIRMAN. The next matter on the agenda this morning is on S. 3274, to implement the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. Mr. Richard D. Kearney will testify for the Department of State.

Mr. Kearney, do you have a prepared statement?

## STATEMENT OF RICHARD D. KEARNEY, CHAIRMAN OF THE SECRETARY OF STATE'S ADVISORY COMMITTEE ON PRIVATE INTERNATIONAL LAW; ACCOMPANIED BY HERMAN MARCUSE, DEPARTMENT OF JUSTICE

Mr. KEARNEY. Yes, sir, I do.

The CHAIRMAN. Will you proceed, sir.

Mr. KEARNEY. Thank you, Mr. Chairman.

During the hearing before the Foreign Relations Committee on United Nations Convention on the Recognition and Enforcement of Foreign Arbital Awards the question if implementing legislation was discussed and it was made clear that the United States would not deposit its instrument of accession until the necessary implementing legislation had been enacted. The bill which is presently before you sets up the legal structure that is required to implement the Convention. The legislation has been cast in the form of an addition to title 9 of the United States Code, which contains the United States Arbitration Act. This proposal for a new chapter represents somewhat of a change in the original plans for implementing legislation which were discussed in the hearing on the Convention. At that time we were considering amendments to certain sections of the United States Arbitration Act and title 28 of the United States Code, the Federal Civil Procedure Act, as appears on page 8 of the committee's report (Ex. Rept. 10, 90th Congress, second session). The letter to the Vice President transmitting the legislation explains the reason for the change in plans, which was basically to avoid the confusion which might result from a series of minor changes in the different sections of the Arbitration Act as between cases falling under the act in its present form and cases falling under the Convention.

The kind of problem that we wished to avoid is well illustrated by section 202 of the new chapter 2. This section defines the arbitral agreements or awards that are considered to fall under the Convention for the purposes of the implementing legislation.

(5)

32

6

Paragraph 1 of article I of the Convention provides that the Convention applies to the recognition and enforcement of arbitral awards without any limitation as to the nature of the relationship that gave rise to the award. It might, for example, be a question of family status. However, paragraph 3 of article I of the Convention permits a state party to the Convention to file a declaration that the Convention will apply only to legal relationships that are considered as commercial under the national law of that state. As was stated in the hearings on the Convention, the United States will file such a declaration because our purpose in adhering to the Convention is for the beneficial effects it will produce for the foreign commerce of the United States and not to make any changes with respect to matters that are traditionally within the jurisdiction of the 50 States of the Union.

Consequently it is necessary to include the substance of this limiting declaration in the legislation that implements the Convention. This is what the first sentence of section 202 intends. It was not, of course, necessary to make any reference to the national law of the United States in the first sentence of section 202 because the definition of commerce contained in section 1 of the original Arbitration Act is the national law definition for the purposes of the declaration. A specific reference, however, is made in section 202 to section 2 of title 9, which is the basic provision of the original Arbitration Act.

At the same time we were faced with the problem that section 1 of the act, which defines commerce, specifically includes both interstate and foreign commerce, while the implementation of the Convention should be concerned only with foreign commerce. Consequently it was necessary to modify the definition of commerce to make it quite clear that arbitration arising out of relationships in interstate commerce remains under the original Arbitration Act and is excluded from the operation of the proposed chapter 2.

To achieve this result we have included in section 202 a requirement that any case concerning an agreement or award solely between U.S. citizens is excluded unless there is some important foreign element involved, such as property located abroad, the performance of a contract in a foreign country, or a similar reasonable relation with one or more foreign states. The reasonable relationship criterion is taken from the general provisions of the Uniform Commercial Code. Section 1–105(1) of the code permits the parties to a transaction that bears a reasonable relationship to any other state or nation to specify that the law of that state or nation will govern their rights and duties.

In this connection, of course, it should be recalled that what we are dealing with under the Convention is solely a situation in which the parties have voluntarily agreed to arbitration. The Convention and implementing legislation will apply to a transaction will apply to a transaction only because the parties to that transaction have agreed to settle disputes by arbitration. The provision on choice of law in the Uniform Commercial Code is also based on the same kind of voluntary action by the parties to a transaction. Since the Commercial Code is basic law on commercial transactions in the United States it seemed appropriate to incorporate its test of reasonable relationship into the implementing legislation on foreign arbitral awards.

The declaration limiting the application of the Convention to commercial matters applies both to the recognition and enforcement

33

7

of arbitral awards under article 1 of the Convention and to the recognition of an agreement to arbitrate under article 2 of the Convention. Consequently the provisions of section 202 or the implementing legislation are applied specifically both to enforcement of arbitration agreements and of arbitral awards.

Sections 203, 204, and 205 of the new chapter 2 take care of certain technical problems arising out of differences between the original Arbitration Act and the convention. Under section 4 of the original act an application for enforcement of an arbitration agreement may be made to a U.S. district court which, "Save for the agreement, would have jurisdiction under title 28 in a civil action or in admiralty of the subject matter * * *." This makes such a case subject to the amount-in-controversy provisions of title 28 relating to actions based on a Federal question or on diversity of citizenship.

The arbitration convention does not contain any provisions with respect to the amount in controversy. For the effective implementation of the convention, therefore, section 203 gives the district courts of the United States original jurisdiction in cases arising under the convention "regardless of the amount in controversy."

The venue provisions in section 204 of the new chapter are substantially the same as those of the original act with one exception. If an arbitration agreement falling under the convention specifies a particular place in the United States where the arbitration is t take place, an enforcement action may be filed in the U.S. court for the district where that place is. To illustrate—Mr. Smith of Chicago and Mr. Jones of London agree to arbitrate any dispute arising out of a contract for the export of machinery from the United Kingdom to the United States at the office of the American Arbitration Association in New York City. A dispute arises and Mr. Smith of Chicago refuses to comply with the agreement to arbitrate. Mr. Jones of London could seek enforcement of the agreement either in the northern district of Illinois or the southern district of New York. On the other hand, if Mr. Jones refuses to arbitrate, Mr. Smith can seek enforcement either in the southern district of New York, or in the appropriate court in London. The provision in section 204 has obvious practical advantages since the arbitration machinery selected by the parties will be within the immediate purview of the enforcing court and the original agreement of the parties with respect to the appointment of arbitrators and the like can be conveniently carried out.

The original Arbitration Act does not contain specific provisions regarding removal to the Federal courts of cases that may fall under it. The case law on the right or removal is not settled. In the *Prima Paint Case* (388 U.S. 395—1967), however, the Supreme Court made it quite clear that arbitration agreements relating to interstate or foreign commerce were fully within the ambit of Federal law. On this basis, it appears appropriate, particularly in implementing a treaty, to clarify the removal issue. Section 205 provides a right to remove an action relating to an arbitration agreement or arbitral award falling under the Convention from a State court to the appropriate district court.

Because we are dealing solely with foreign commerce it appears very likely that many of the arbitration agreements falling under the Convention will provide for arbitration outside the United States.

34