IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| S&T OIL EQUIPMENT & MACHINERY, LTD, *et al.*, | § § § | |
| Plaintiffs, | § | |
| v. | § § | CIVIL ACTION NO. H-11-0542 |
| JURIDICA INVESTMENTS LIMITED, *et al.*, | § § § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Pending before the Court is Defendants' Motion to Dismiss in Favor of Arbitration [Doc. # 16] ("Motion to Dismiss"), to which Plaintiffs have responded [Doc. # 30] and Defendants have replied [Doc. # 33]. Having reviewed the full record in this case and applicable legal authorities, the Court **grants** the Motion to Dismiss.

**I.     FACTUAL BACKGROUND**

This case arises out of a contractual relationship between Plaintiffs and Defendant Juridica Investments Ltd. ("JIL"). JIL provides litigation financing to businesses involved in expensive, complex, high-risk commercial legal disputes. In May 2008, Plaintiffs entered into an "Investment Agreement" with JIL, whereby JIL agreed to fund part of the legal fees and costs of an arbitration before the International Center for the Settlement of Investment Disputes ("ICSID") that Plaintiffs had

brought against the Government of Romania arising from commercial activity in Romania (the "Romanian Arbitration").[1] This arbitration took place in Washington, D.C. from 2007 to approximately 2009. The law firm of King & Spalding represented Plaintiffs in the Romanian Arbitration under a contingency fee contract. Plaintiffs' Investment Agreement with JIL changed that financial arrangement.

The parties' Investment Agreement requires arbitration of all disputes between the parties.[2] The arbitration provision mandates the arbitration will be through the

---

[1] The Romanian Arbitration was ultimately dismissed.

[2] Investment Agreement [Doc. # 3-2], ¶ 15.2 ("[With exceptions not pertinent to this case] all actions, disputes, claims and controversies under common law, statutory law or in equity of any type whatsoever, whether arising before or after the date of this Agreement, and whether directly or indirectly relating to: (a) this Agreement and/or any amendments and addenda hereto, or the breach, invalidity or termination hereof; (b) any previous or subsequent agreement between ASSIGNEE [JIL] and ASSIGNORS [S&T Oil Equipment & Machinery Ltd. and Mr. Valerian Simirica]; (c) any act committed by ASSIGNEE or by any parent company, subsidiary, or affiliated company of ASSIGNEE (the 'ASSIGNEE Companies'), or by any employee, agent, officer or director of an ASSIGNEE Company whether or not arising within the scope and course of employment or other contractual representation of the ASSIGNEE Companies (provided that such act arises under a relationship, transaction or dealing between ASSIGNEE and ASSIGNORS); (d) any act committed by ASSIGNORS or by any parent company, subsidiary or affiliated company of S&T (the 'ASSIGNOR Companies'), or by any employee, agent, officer or director of an ASSIGNOR Company whether or not arising within the scope and course of employment or other contractual representation of the ASSIGNOR Companies (provided that such act arises under a relationship, transaction or dealing between ASSIGNEE and ASSIGNORS) and/or (e) any other relationship, transaction or dealing between ASSIGNEE and ASSIGNOR (collectively the 'Disputes') will be subject to and resolved by binding arbitration.").

London Court of International Arbitration ("LCIA").[3]  The Investment Agreement further requires that the situs of any arbitration be in Guernsey, Channel Islands,[4] where JIL is incorporated.

JIL initiated arbitration proceedings against Plaintiffs on December 22, 2010. Plaintiffs filed the instant case with an Ex Parte Emergency Application for Temporary Restraining Order and Order to Show Cause Regarding Preliminary Injunction [Doc. # 2] (the "TRO Application"), seeking to enjoin that arbitration from going forward.  The Court required Plaintiffs serve Defendants with all papers filed of record and refused to grant any *ex parte* relief.  Defendants filed a response to the TRO Application [Doc. # 15] and contemporaneously filed the instant Motion to Dismiss.  The Court held an evidentiary hearing on the TRO Application on February 24, 2011, and ordered Plaintiffs to respond to Defendants' Motion to Dismiss by March 10, 2011.  By Order dated March 10, 2011 [Doc. # 29], the Court denied the TRO Application.  Defendants' Motion to Dismiss is now ripe for decision.

---

[3]   *Id.*, ¶ 15.3 ("All arbitration hereunder will be conducted in accordance with the Arbitration Rules ('Rules') of The London Court of International Arbitration ('LCIA').").

[4]   *Id.*, ¶ 15.4 ("The seat and situs of the arbitration and of all oral arbitration hearings will be in St. Peter Port, Guernsey, Channel Islands.").

## II.   APPLICABLE LAW

Defendants move to dismiss Plaintiffs' claims because they are subject to arbitration under the Investment Agreement. Accordingly, the Court construes Defendants' Motion to Dismiss as a Motion to Compel Arbitration.

In 1970, Congress enacted enabling legislation for the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §§ 201-208 (the "Convention").[5] "The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974).

"If an international arbitration clause falls under the Convention Act, 'the Convention requires district courts to order arbitration.'" *Lim v. Offshore Specialty Fabricators, Inc.*, 404 F.3d 898, 902-03 (5th Cir. 2005) (quoting *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat. Oil Co.,* 767 F.2d 1140, 1145 (5th Cir. 1985)).

---

[5]   *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n. 15, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974) ("On June 10, 1958, a special conference of the United Nations Economic and Social Council adopted the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. In 1970 the United States acceded to the treaty, (1970) 3 U.S.T. 2517, T.I.A.S. No. 6997, and Congress passed Chapter 2 of the United States Arbitration Act, 9 U.S.C. § 201 *et seq.*, in order to implement the Convention.").

Under the Convention Act, "[a] court having jurisdiction under [the Convention] may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States." 9 U.S.C. § 206.

"In determining whether the Convention requires compelling arbitration in a given case, courts conduct only a very limited inquiry." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004). "[A] court should compel arbitration if (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen." *Id.* The lack of a foreign citizen does not render the Convention inapplicable where "there is a reasonable relation between the parties' commercial relationship and some important foreign element." *Id.* at 339-40; *see also* 9 U.S.C. § 202 ("An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states."). "Once these requirements are met, the Convention requires the district court[ ] to order arbitration . . . unless it finds that the said agreement is null and void,

inoperative or incapable of being performed." *Freudensprung*, 379 F.3d at 339 (internal quotation marks and citations omitted). Where "all of the issues raised before the district court are arbitrable, dismissal of the case is not inappropriate." *Fedmet Corp. v. M/V Buyalyk*, 194 F.3d 674, 678 (5th Cir. 1999).

### III. DISCUSSION

It is undisputed that the first three *Freudensprung* requirements for the Convention's applicability are met in this case.[6] The parties dispute, however, (1) whether JIL is a United States citizen for purposes of the Convention, and if so (2) whether "there is a reasonable relation between the parties' commercial relationship and some important foreign element."[7] Further, Plaintiffs claim that the arbitration clause of the Investment Agreement is not enforceable because it was procured by fraud and is substantively and procedurally unconscionable. The Court addresses each of these issues in turn.

---

[6] *See* Plaintiffs' Response to Defendants' Motion to Dismiss in Favor of Arbitration [Doc. # 30] ("Response"), at 7 n.3; Defendants' Motion to Dismiss in Favor of Arbitration [Doc. # 16], at 8.

[7] The parties also dispute whether the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, alternatively requires the Court to enforce the Investment Agreement's arbitration provision. Because the Court concludes that the Convention applies and requires the Court to enforce the arbitration provision, the Court need not reach this issue.

### A. JIL's Citizenship

For purposes of the Convention, "a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States." 9 U.S.C. § 202. It is undisputed that JIL is incorporated in Guernsey. Plaintiffs argue that JIL has its principal place of business in the United States because that is where JIL's officers allegedly direct, control, and coordinate the corporation's activities. Plaintiffs rely on *Astra Oil Trading NV v. Petrobas*, No. H-09-1274, 2010 WL 3069793 (S.D. Tex. 2010), for the proposition that the Supreme Court's interpretation of "principal place of business" in *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2009), applies for purposes of 9 U.S.C. § 202. In *Hertz*, the Supreme Court, in evaluating diversity jurisdiction, concluded that "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." 130 S. Ct. at 1192.

Assuming *arguendo* the *Hertz* test applies to determine an arbitration clause's signatory's citizenship for purposes of the Convention, the Court is not persuaded that JIL is a United States citizen. Plaintiffs' principal argument is that JIL is controlled by Richard W. Fields ("Fields") and Timothy D. Scrantom ("Scrantom"), who are "senior management" of Juridica Capital Management Limited ("JCML"), a Guernsey corporation, and JCML's wholly owned subsidiary, JCML-US, a Delaware

corporation. JIL is not a corporate affiliate of JCML or JCML-US. Rather, JIL has an Investment Management Agreement with JCML. Plaintiff argues that all material business matters between Plaintiffs and JIL were handled through JCML, and later JCML-US, by Scrantom and other business associates, who each reside in the United States.[8] Plaintiffs further argue that JIL is merely a shell company controlled in fact by JCML and/or JCML-US. To support their argument, Plaintiffs cite to: (1) JIL's submission to the "AIM,"[9] which *inter alia* describes JIL's investment management agreement with JCML;[10] (2) JIL's website; (3) Fields's business card and voter registration information; and (4) JIL's UCC filings.[11]

Plaintiffs' reliance on the actions of JCML and/or JCML-US to determine JIL's

---

[8] The business matters on which Plaintiffs primarily rely include three letters sent to Plaintiffs from JCML and its officers in its capacity as manager of JIL. *See* Exhibits A-C to Plaintiffs' Response [Docs. # 30-1, # 30-2, # 30-3]. Although one of these letters is on letterhead providing JCML's New York address, *see* Exhibit A to Plaintiffs' Response [Doc. # 30-1], the other two letters are on letterhead with JCML's Guernsey address, *see* Exhibits B & C to Plaintiffs' Response [Docs. # 30-1, # 30-2].

[9] According to Defendants, "AIM" is an alternative market operated by the London Stock Exchange. *See* Declaration of Paul Sullivan ("Sullivan Declaration"), ¶ 5, attached as Exh. 1 to Defendants' Brief in Support of Motion to Dismiss in Favor of Arbitration [Doc. # 17].

[10] *See* Plaintiffs' Response, at 11-13; JIL's Admission to Trading on AIM [Doc. # 3-3], at 17, 27-29, 64-65.

[11] *See* Plaintiffs' Response, at 12; Exhibit 4 to Plaintiffs' Memorandum in Support of TRO Application [Doc. # 3-4].

principal place of business is misplaced. Plaintiffs do not dispute that JCML and JCML-US are legally distinct entities from JIL. Plaintiffs' own evidence establishes that Fields and Scrantom are employed by JCML, a separate company incorporated in Guernsey with whom JIL has a contractual relationship.[12] Plaintiffs have not provided, and the Court is not aware of any, legal authority for the proposition that this Court may determine one company's, here, JIL's, principal place of business by looking to the activities of another company, JCML, an entity with which JIL contracted to perform many day-to-day services. Plaintiffs' cited legal authority indeed suggests the opposite. *See Hertz Corp.*, 130 S. Ct. at 1192 (defining a corporation's principal place of business as "the place where *a corporation's* officers direct, control, and coordinate *the corporation*'s activities." (emphasis added)); *Astra Oil*, 2010 WL 3069793, at * 2 ("Generally, when a subsidiary is incorporated separate from its parent, it is treated as an independent entity for purposes of determining federal court jurisdiction."). Under these circumstances, the Court concludes that JIL's principal place of business must be determined by looking to its own activities separate from those of either JCML or JCML-US.

Looking at JIL's activities only, Defendants have demonstrated that JIL's principal place of business is in Guernsey. Defendants presented evidence that (1) JIL

---

[12]  *See* JIL's Admission to Trading on AIM [Doc. # 3-3], at 27-29.

is incorporated and maintains its only offices in Guernsey; (2) JIL's registered agent is located in Guernsey; (3) JIL does not have any offices, officers, or employees outside of Guernsey; (4) all contracts entered into by JIL are executed and delivered in Guernsey; (5) JIL maintains its accounts in Guernsey; (6) JIL holds its funds in banks in Guernsey; (7) JIL disburses funds used for its investments from Guernsey; (8) JIL remits all proceeds from its investments to accounts in Guernsey; (9) JIL is controlled by a three-member board of directors consisting of Lord Daniel Brennan, Q.C., a British citizen living in England, Richard D. Battey, a British citizen living in Guernsey, and J. Kermit Birchfield, and American citizen living in the United States; and (10) JIL's board of directors meets in person on a quarterly basis and the majority of its meetings have been conducted in-person in Guernsey.[13]

For these reasons, the Court concludes that JIL's principal place of business is in Guernsey. As such, JIL is not a United States citizen for purposes of 9 U.S.C. § 202. Accordingly, all four *Freudensprung* requirements for the Convention's applicability are met and the Convention requires the Court to order arbitration.[14]

---

[13]   *See* Sullivan Declaration, ¶¶ 4, 5, 27, 28.

[14]   In their Response, Plaintiffs, in the alternative, cross move for leave to conduct discovery into Defendants' citizenship. *See* Plaintiffs' Response, at 41. Under these, circumstances, the Court concludes that such discovery is not warranted and Plaintiffs' request is denied.

**B.     Foreign Element**

In the alternative, for the sake of completeness, the Court addresses whether the Convention applies even assuming *arguendo* that JIL is a United States entity. The Convention applies to agreements between two United States entities where "there is a reasonable relation between the parties' commercial relationship and some important foreign element." *Freudensprung*, 379 F.3d at 339-40. The *Freudensprung* Court also stated that the Convention applies where "there is a reasonable connection between the parties' commercial relationship and a foreign state that is independent of the arbitral clause itself." *Freudensprung*, 379 F.3d at 341. This principle derives from section 202 of the Convention Act, which provides that "[a]n agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states."

Under all the circumstances in the case at bar, the Court concludes the parties' commercial relationship has a "reasonable relation with one or more foreign states." The parties have a contractual relationship, which is embodied in the Investment Agreement. The Investment Agreement provides that JIL would pay certain attorneys fees for an arbitration against the Romanian government concerning commercial

activity in Romania.[15] Defendants provide evidence that these funds were wired from Guernsey.[16] In exchange, Plaintiffs assigned JIL a percentage of any proceeds from the Romanian Arbitration[17] and granted JIL a security interest in all "Collateral," which included *inter alia* Plaintiffs' rights in a Romanian joint stock company.[18] The Investment Agreement also specifically states that it was executed in Guernsey and that performance of its terms would occur in Guernsey.[19]

Plaintiffs characterize the parties' commercial relationship as JIL having "acquired an interest from an Illinois citizen for an asset in Washington, D.C., which was being pursued by Houston lawyers."[20] The Court finds Plaintiffs' characterization incomplete, artificially superficial, and unpersuasive.[21] The Romanian Arbitration was

---

[15] *See* Investment Agreement, ¶ 3.2.

[16] *See* Second Declaration of Paul Sullivan [Doc. # 33-1], ¶ 5 and Exh. B thereto (attaching wire confirmation).

[17] *See id.*, ¶ 3.1. Plaintiffs also assigned to JIL a percentage of any proceeds from a case that Plaintiffs had filed in the national courts of the Government of Romania. The contract did, however, note that Plaintiffs intended to withdraw that case from the Romanian courts to the extent permissible by Romanian law. *See id.*, ¶¶ 3.1, 1.5, 1.29, 1.32.

[18] *See id.*, ¶¶ 3.7, 1.7, 1.12, 1.23, 1.27.

[19] Investment Agreement, at p. 27.

[20] *See* Plaintiffs' Response, at 23.

[21] Plaintiffs' cited case law is similarly unpersuasive. Plaintiffs rely primarily on *Jones v. Sea Tow Servs. Freeport N.Y., Inc.*, 30 F.3d 360 (2d Cir. 1994); *Access Info. Mgmt. of Hawaii, L.L.C. v. Shred-It America, Inc.*, No. 10-00622 JMS/KSC, 2010 WL

pending in Washington, D.C., before the International Centre for Settlement of Investment Disputes ("ICSID"). According to its website, the ICSID is an "autonomous international institution established under the Convention on the Settlement of Investment Disputes between States and Nationals of Other States . . . [whose] primary purpose . . . is to provide facilities for conciliation and arbitration of international investment disputes."[22] The Romanian Arbitration was filed with the ICSID pursuant to the United States' Treaty with Romania Concerning the Reciprocal Encouragement and Protection of Investment. That the situs of this arbitration was Washington, D.C., and that Plaintiff chose United States lawyers to represent him in this arbitration do not negate the fact that the Romanian Arbitration was largely an international dispute.[23] Further, pursuant to the Investment Agreement, JIL secured an interest in the proceeds from any judgment in the Romanian Arbitration. In order to collect any such judgment, JIL and/or Plaintiffs would have to enforce the judgment

---

4642045 (D. Hawaii Nov 2, 2010); *Matabang v. Carnival Corp.*, 630 F. Supp. 2d 1361, 1367 (S.D. Fla. 2009); *Ensco Offshore Co. v. Titan Marine L.L.C.*, 370 F. Supp. 2d 594 (S.D. Tex. 2005). These decisions are not binding authority on this Court. Nevertheless, the Court has considered these cases and finds them factually and materially distinguishable from the case at bar.

[22] *See* Second Declaration of Paul Sullivan [Doc. # 33-1], ¶ 4 and Exh. A thereto.

[23] The dispute in the Guernsey arbitration at issue here is whether Plaintiffs failed to disclose material facts to JIL in connection with JIL's funding Plaintiffs' attorneys fees in the Romanian Arbitration. Thus, the details of that international arbitration are in issue.

against the government of Romania in Romania.

The Court concludes that these circumstances create a "reasonable relationship" to one or more foreign states for purposes of § 202. As such, even if JIL is a United States entity, the Convention applies.[24]

### C.   Fraud and/or Unconscionability

Finally the Court rejects Plaintiffs' assertion that the arbitration provision is unenforceable because it was procured by fraud and is substantively and procedurally unconscionable. Plaintiffs argue the same points as raised in their TRO Application. The Court rejected these arguments in denying that Application. Plaintiffs have not presented any additional legal or factual argument that would alter the Court's analysis. Accordingly, for the reasons stated in its Order dated March 10, 2011 [Doc. # 29], the Court finds that Plaintiffs have not demonstrated that the arbitration provision was secured by fraud, or that it is substantively or procedurally unconscionable.

## IV.   CONCLUSION AND ORDER

For the reasons stated above, the Court concludes that the Convention requires

---

[24]   In their Response, Plaintiffs, in the alternative, cross move for leave to conduct discovery into the foreign element of the Investment Agreement. *See* Plaintiffs' Response, at 41. The Court concludes that such discovery is not warranted and Plaintiffs' request is denied.

the Court to order arbitration of Plaintiffs' claims pursuant to the parties' Investment Agreement.  Because all of Plaintiffs' claims are subject to arbitration in Guernsey pursuant to the parties' Investment Agreement, the Court concludes that dismissal of this case is appropriate.  Accordingly, it is hereby

**ORDERED** that Defendants' Motion to Dismiss in Favor of Arbitration is hereby **GRANTED.**  Plaintiffs complaint is **DISMISSED** in favor of arbitration in Guernsey.  It is further

**ORDERED** that all other relief requested by Plaintiffs in their Response [Doc. # 30] is **DENIED.**

SIGNED at Houston, Texas, this **25th** day of **April, 2011.**

_____
Nancy F. Atlas
United States District Judge